**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DENNIS MARCHETTI et al,<br>*Plaintiffs*,<br><br>v.<br><br>LOCKHEED MARTIN CORP. et al,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)  3:22-CV-1527 (OAW)<br>)<br>)<br>) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

**THIS ACTION** is before the court upon the parties' cross-motions for summary judgment (together, "Motions"). *See* ECF No. 44 ("Defendants' MSJ") and ECF No. 45 ("Plaintiffs' MSJ"). The court has reviewed the Motions, the parties' statements of facts, ECF Nos. 44-2 and 45-1, their oppositions, ECF Nos. 47 and 48, Defendants' reply in support of Defendants' MSJ, ECF No. 50,[1] and all exhibits and is thoroughly apprised in the premises. For the reasons set forth herein, Defendants' MSJ is **DENIED in part and GRANTED in part;** and Plaintiffs' MSJ is **GRANTED.**

**I.   BACKGROUND**

This case arises from the death of Natale Marchetti ("Natale"), who was the brother of plaintiff Dennis Marchetti ("Dennis"). The parties agree that Natale passed away at 62 years of age on October 17, 2021, and that he had worked continuously for Defendants for over 43 years, most recently for defendant Lockheed Martin Corporation ("Lockheed"), and before that for defendant Sikorsky Aircraft Corporation ("Sikorsky"), which was

---

[1] Plaintiffs did not file a reply brief and the time in which to do so has passed. Accordingly, both Motions are ripe for review.

1

acquired by Lockheed in 2015.  Lockheed was Natale's employer of record at the time of his death.  The parties also agree that at the time of his death, Natale was a participant in a pension plan offered through his employment (the "Plan"), which is administered by Lockheed, and that he had not yet retired under the terms of the Plan, although he was eligible for early retirement benefits.

On October 29, 2020, Natale executed a durable power-of-attorney form (the "POA") appointing Dennis as his attorney-in-fact.  The form states that the appointee is authorized to act on behalf of the principal in matters dealing with "estates, trusts, and other beneficial interests" and "retirement plans."  *See* ECF No. 44-5 at 1.  The form also includes a section entitled "Optional Estate Planning Powers," which requires the executor of the form to specifically initial any estate planning functions they wish to grant to their appointed power of attorney.  Failing to check a box means that the appointed power of attorney does not have authority to perform that specific function on the executor's behalf.  It is undisputed that Natale did not check the box next to "Create or change a beneficiary designation."  *Id.* at 3.

On October 18, 2021, the appropriate entity ("LMESC," a non-party with unclear connections to Defendants which apparently performs ministerial functions for the Plan) received a completed beneficiary designation form naming Natale's four siblings as his beneficiaries under the Plan.   The form was dated and postmarked October 15, 2021, and it was signed by "Dennis Marchetti P.O.A."  The form also indicates that Natale was not married.  *See generally* ECF No. 44-6.

On December 7, 2021, a benefit summary letter was sent to Dennis, which advised him that Natale was entitled to no death benefits.  On December 13, 2021, Dennis called

LMESC with questions about the benefit summary letter, but he was referred to Lockheed. Dennis apparently reached out to Natale's union next, and the union contacted Lockheed on March 1, 2022, whose position then and now is that Natale was not entitled to any service-based benefit under the Plan because at the time of his death, he was not married and his beneficiary designation was ineffective because Dennis did not have power under the POA to alter Natale's beneficiaries. Dennis filed suit on December 1, 2022, both in his individual capacity and as the administrator of Natale's estate.

## II. **LEGAL STANDARD**

Summary judgment appropriately may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine factual disputes exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* "'[I]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party,' summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002)) (alteration in original).

But a party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d

3

511, 518 (2d Cir. 1996) (internal citation omitted).  Where there is no evidence upon which a jury properly could return a verdict for the nonmovant, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010) ("[The] preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (alterations in original).

### III. DISCUSSION

Dennis pleaded two counts in the operative complaint: a breach of contract claim against Lockheed (predicated upon its failure to pay retirement benefits from the Plan); and a statutory theft claim against both Lockheed and Sikorsky for withholding Natale's interest in the Plan, which interest, according to Dennis, represents a portion of Natale's employment compensation.[2]  Before turning to the parties' substantive arguments, there are several procedural issues the court must address first.

#### A. Preemption and Exhaustion

Defendants argue that Plaintiffs fail to state any claim against Sikorsky because Sikorsky no longer has any administrative authority over the Plan and therefore cannot be held liable.  Plaintiffs do not respond to this argument and so the court considers the point conceded.  *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").  Sikorsky therefore is dismissed from the action.

---

[2] The complaint also alleged that Natale's interest in the Plan represented wages withheld during his employment, but it is now settled that the funds at issue here were all contributed by Natale's employer.

4

Lockheed claims that any state law claim is preempted by the Employee Retirement Income Security Act ("ERISA"), and so any state law claim must be dismissed as to Lockheed as well. Dennis counters that he brought suit merely to enforce the POA, and it is Defendants who have raised ERISA issues, but the court finds that assertion to be disingenuous. Connecticut law provides for a private cause of action to seek an accounting pursuant to a POA, *see* Conn. Gen. Stat. Ann. §§ 1-350o; 45a-175(d), but that is not the claim asserted nor the relief sought in the complaint. The complaint clearly asserts a claim for breach of contract (a breach of the Plan specifically) and seeks payment of benefits from the Plan. And while Plaintiffs' Motion does suddenly and summarily seek an accounting, the motion cannot amend the pleading. The complaint clearly prays for Plan benefits. Accordingly, the court agrees with Lockheed that this is an ERISA action under 29 U.S.C. § 1132(a), which provides a private right to action to challenge a benefits determination. Moreover, the court finds that the two counts are duplicative: the only recourse against Lockheed is to sue for dispersal of any benefits to which Dennis and/or Natale's estate are entitled. Thus, the court reviews the Motions in the context of a single ERISA claim against Lockheed challenging Lockheed's denial of beneficiary status and, by extension, denial of Plan benefits.

Lockheed next contends that the court does not have jurisdiction to hear the claims asserted because Dennis failed to exhaust his administrative remedies with the Plan. But the exhaustion requirement under ERISA is not a jurisdictional hurdle for Plaintiffs to clear, but an affirmative defense for Lockheed to support. *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006) (holding "that a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense."); *G4S Int'l*

*Emp. Servs. (Jersey), Ltd. v. Newton-Sealey*, 975 F.3d 182, 187 (2d Cir. 2020) ("It is well-established that a defendant . . . bears the burden of proving its affirmative defense.") (quoting *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001)) (alteration in original).  And while Lockheed expends considerable effort supporting the general principal of exhaustion, there is almost no argument as to how exhaustion ought to have been accomplished in this specific case.  Lockheed summarily asserts that Plaintiffs should have filed a claim, and indeed, the claim review process is the only administrative review available under the Plan.  *See* ECF No. 44-7 at 43 (Section 10.9).  But it does not appear that Plaintiffs could have used that process.  In the first instance, it does not apparently include in its scope challenges to a POA or beneficiary status, but moreover, the Plan explicitly offers the review process to participants and beneficiaries.  *Id.* (providing that "[a]ny participant, beneficiary, surviving spouse, or contingent annuitant, or other person who is entitled to a payment of a benefit for which provision is made in this Plan" may file a claim).  Lockheed already had determined that Dennis was not a beneficiary, so he could not have filed a claim personally, and though he might have brought a claim on Natale's behalf pursuant to the POA, both the POA and Natale's participation in the Plan would have terminated at the time of his passing, *id.* at 13 (Section 4.4); Conn. Gen. Stat. Ann. § 1-350i(a)(1), so it does not appear that he could have filed in Natale's stead, either, particularly where Lockheed already had declined to give the POA and the beneficiary designation effect.  Lockheed's determination that Dennis was not a beneficiary excluded him from the process Lockheed now asserts he ought to have used.  Accordingly, the court finds that Lockheed has failed to show that there was an administrative process available to Dennis for him to exhaust.

The court therefore will proceed to the parties' substantive arguments.

### B. <u>Benefits Determination</u>

At bottom, this case presents one question: Did Natale have a beneficiary at the time of his death such that the Plan must pay benefits to that beneficiary? Lockheed asserts that Natale did not designate a beneficiary prior to his death, and therefore there is no one to whom the Plan owes benefits. Plaintiffs argue that Natale did have a beneficiary. In their opposition to Defendants' MSJ, they challenge Lockheed's interpretation of the POA (and by extension, Lockheed's rejection of the beneficiary designation form), though in Plaintiffs' MSJ they argue only that the Plan itself provides that Natale's estate is his beneficiary.

The first determination the court must make when presented with a § 1132 claim is the appropriate standard of review. Benefits determinations made under "plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir.2003). "Otherwise, courts review plan administrators' determinations *de novo*." *Novella v. Westchester Cnty.*, 661 F.3d 128, 140 (2d Cir. 2011). Here, the Plan clearly authorizes the administrator to make benefits determinations and to interpret the terms of the Plan. ECF No. 44-7 at 47 (Section 10.4(b)). The court finds this qualifies as "broad discretionary authority," and accordingly applies the arbitrary-and-capricious standard. *See Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 84 (2d Cir. 2021) (finding the arbitrary-and-capricious standard appropriate where the

plan at issue contained a term giving "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [p]olicy.").

### i. *The POA*

Though Dennis does not appear to contest that Lockheed is entitled to deference in construction of the *Plan*, he argues that Lockheed's construction of the *POA* is entitled to no special solicitude, and moreover, that the POA should be construed using the usual principles of agency (i.e., to effect Natale's wish), which Dennis avers (in an affidavit) was to grant him the broadest authority possible. Lockheed counters that its interpretation of the POA and the Plan is entitled to deference, and in reviewing that interpretation, the court is confined to the administrative record.

The court need not determine whether Lockheed's interpretation of the POA is entitled to deference because regardless of the proper standard of review, Dennis has failed to allege any facts that might call that interpretation into question. Both parties recognize that POAs are governed by state statutes (as Connecticut has adopted the Uniform Power of Attorney Act, *see* Conn. Gen. Stat. Ann. § 1-350, et seq.), and review of relevant provisions thereof reveals the clear statement that "[a] person is not required to accept an acknowledged power of attorney if . . . [t]he person in good faith believes that the power is not valid or that the agent does not have the authority to perform the act requested . . . ." Conn. Gen. Stat. Ann. § 1-350s(b)(5). Regardless of whether Lockheed's construction of the POA was correct, Plaintiffs have not alleged, or even adduced any evidence tending to show, that its construction was in bad faith. Accordingly, there is no basis upon which the court might find a material factual dispute as to

Lockheed's construction of the POA.  The court therefore accepts (as Plaintiffs do in Plaintiffs' MSJ) that Dennis did not have authority to complete the beneficiary designation form on Natale's behalf, and thus the form submitted just before Natale's death was ineffective.

> ii. *The Plan*

"ERISA plans are construed according to federal common law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002).  According, the court must "review the Plan as a whole, giving terms their plain meanings."  *Id.; see also Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan,* 572 F.3d 76, 81 (2d Cir. 2009) ("[W]e apply rules of contract law to ERISA plans . . . .").

Under the arbitrary-and-capricious standard, the court may disturb Lockheed's benefit determination "only if the decision was 'without reason, unsupported by substantial evidence[,] or erroneous as a matter of law.'" *Celardo*, 318 F.3d at 146 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)).  In practice, though, the standard only makes any difference where a plan document contains ambiguous terms, since "unambiguous language leaves no room for the exercise of discretion."  *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 121 (2d Cir. 2022) (quoting *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994)).  "'Whether [plan] language is ambiguous is a question of law' for the court, turning on whether the language is reasonably 'capable of more than one meaning' within the 'context of the entire' plan." *Id.* (quoting *Fay*, 287 F.3d at 104) (alteration in original).

Here, there is no argument that the Plan is ambiguous, and the court agrees that the relevant terms are clear.  The court's discussion thus begins there.

Review must begin at Article 7, which covers "Death Benefits," *see* ECF No. 44-7 at 27, and Section 7.2 more specifically, *id.* at 28. That section clearly states that if a participant is at least 55 years old, has completed at least 10 years of continuous service, and dies while still employed by Lockheed, the participant's spouse[3] is entitled to certain benefits, except that if the participant "[h]ad designated a Beneficiary other than the [s]pouse, . . . the survivor benefits payable by the Plan shall be paid in accordance with such . . . designation . . . ." *Id.*

No one disputes that when Natale passed, he was over 55 years old, he had well above 10 years of continuous service, and he was still employed by Lockheed. The court thus agrees with the parties that this section governed Natale's entitlement to benefits at the time of his passing.

The parties also agree that Natale was not married when he died. But opinions diverge from that point. Lockheed argues that because he had no spouse and because his beneficiary designation form was ineffective, Natale died with no beneficiary at all. Plaintiffs contend that Natale's estate is his beneficiary by execution of the Plan itself.

"Beneficiary" is a defined term in the Plan whose definition is at the crux of this dispute. The court therefore reproduces that definition in its entirety here:

> [A]ny one or more individual(s) designated in writing by the [p]articipant, in a form and manner prescribed by the Plan Administrator, to receive death benefits payable under the provisions of Section 5.6 or Article 7 of the Plan. The [s]pouse of a [p]articipant shall be the sole primary Beneficiary unless a contrary designation has been made in accordance with the procedures set forth in Section 5.6(c) hereof, applicable to the designation of a Beneficiary other than a [s]pouse. A [p]articipant may, subject to the requirements of Section 5.6(c) and 7.5 hereof, change his or her Beneficiary designation at

---

[3] "Spouse" and "Participant" are defined terms in the Plan, but those definitions are irrelevant to this discussion and so the court uses the terms generally, to indicate their usual meaning.

> any time by completing and filing a form for such purpose, in the manner prescribed by the Plan [a]dministrator. **If no such designation is in effect at the time of the death of the [p]articipant,** or if no person or entity so designated shall survive the [p]articipant, **"Beneficiary" shall mean** the [s]pouse of the [p]articipant, or if no [s]pouse shall survive the [p]articipant, **the estate** of the [p]articipant; provided that if the [p]articipant and his Beneficiary die simultaneously, the remaining payments, if any, described in Section 5.6 shall be paid to the estate of the [p]articipant. For purposes of the Plan, Beneficiary may sometimes be referred to as [c]ontingent [a]nnuitant.

*Id.* at 8 (Section 2.6 of the Plan) (emphasis added).

Lockheed contends that under these terms, its benefit determination must be upheld, while Plaintiffs take the opposite position. Lockheed's argument is predicated entirely upon the abridgement of this definition to the first sentence. Plaintiffs counter, though, that the complete definition clearly states that Natale's estate already is his "Beneficiary." Lockheed replies that the portion of the definition providing for an estate as a "Beneficiary" does not apply to Article 7. Lockheed asserts, without authority, that a "Beneficiary" under Article 7 must be a person with a natural life, because the benefit itself is an annuity which "requires that the recipient be a person with a life expectancy (and not, for example, an estate)." ECF No. at 14 n.3. Finally, Lockheed cites to the Beneficiary designation form and the summary plan description ("SPD") to bolster its position, as the form requires the Beneficiary to have a date of birth and a social security number, and the SPD clearly states that the Plan will pay nothing should a participant die unmarried and with no designated beneficiary.

The court cannot accept Lockheed's position. In construing the Plan, the court must read the terms as they are written and give those terms their plain meaning. To look only to the first sentence of the "Beneficiary" definition, but no further, is tantamount

to rewriting the Plan, which the court may not do. *See Burke*, 572 F.3d at 81 ("[A] court must not 'rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous . . . .'") (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir.1992)); *Sevely v. Bank of New York Mellon Corp. Long Term Disability Coverage Plan*, 794 F. App'x 34, 36 (2d Cir. 2019) ("Courts may enforce, but may not change, the terms of a plan."). And there is no indication in the "Beneficiary" definition that an estate explicitly may be a "Beneficiary" with respect to some benefits, but not at all to others. The definition clearly has precise, tailored parameters, and limits its applicability in specific ways. It only applies with respect to Article 7 and Section 5.6, incorporating specific provisions of the same, and even specifically addresses a potential ambiguity with respect to benefits payable under Section 5.6. There is simply no basis upon which to construe the term to contain limitations which are not stated anywhere in the Plan.

The court also notes that this construction of the definition appears to be consistent with Lockheed's own understanding of other provisions of the Plan. It is undisputed that Natale also was entitled to a cash balance benefit under the Plan, which already has been paid to Natale's estate. But the provisions relevant to that particular benefit clearly state that "[i]f a [p]articipant is not married at death and has not named a non-spousal Beneficiary, the [cash balance benefit] shall be paid . . . to his estate . . . ." ECF No. 44-7 at 67 (Table A-2, Section VIII). The court cannot comprehend how one could construe the language of the "Beneficiary" definition differently than this language in the cash balance provisions.

Nor is the court persuaded that the "Beneficiary" must be a natural person. The Plan clearly allows for the Beneficiary to be an estate, first by the clear definition of the

12

term itself, which contemplates that a Beneficiary may be a "person *or entity*" of a participant's choosing, and which clearly provides that where no such person or entity survives the participant, *or where there is no Beneficiary designation in effect when the participant dies,* then "'Beneficiary' shall mean the [s]pouse of the [p]articipant, or if no [s]pouse shall survive the [p]articipant, *the estate of the [p]articipant.*" ECF No. 44-7 at 8 (emphases added). Furthermore, where appropriate, the Plan can and does refer to the "Beneficiary" as a natural person, for example where it refers to a "Contingent Annuitant" specifically instead of a "Beneficiary" more generally (as the definition contemplates it may do). At one point it refers to a "joint annuitant Beneficiary" as such "*person* as the [p]articipant may designate." *Id.* at 17 (Section 5.6(b)(iv) of the Plan) (emphasis added). And, perhaps most relevant here, it provides a distinct definition for the term "Designated Beneficiary," which term incorporates ERISA's definition of a "designated beneficiary," which encompasses only an "*individual* designated as a beneficiary by the employee," 26 U.S.C.A. § 401(a)(9)(E)(i) (emphasis added). In contrast, under ERISA, "[t]he term 'beneficiary' means a person designated by a participant, *or by the terms of an employee benefit plan*, who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8) (emphasis added). Here, the Plan clearly designates Natale's estate as his Beneficiary for purposes of Article 7.

This reading of the Plan does not produce absurd or infeasible results. Article 7 necessarily incorporates some of the terms of Article 5 insofar as Article 7 grants those benefits to which the participant would have been entitled had the participant retired even one day before their death. ECF No. 44-7 at 28. In Natale's case, that means he was entitled to early retirement benefits, which are laid out in Section 5.4 of the Plan. *Id.* at

13

15. However, there are alternative forms of the benefit payable under that section which are laid out in Section 5.6 of the Plan, and most of those elections also are incorporated into Section 7.2.[4]  *Id.* at 16, 28.  And while it is undisputed that Natale had no effective alternative election at the time of his death, Section 5.6 states that "**in all cases where the Beneficiary is not a natural person**, the payments due to such Beneficiary will be commuted and disbursed in an [a]ctuarially [e]quivalent single lump sum payment."  *Id.* 16–17 (emphasis added).  Thus, the court concludes that the Plan addresses how entity Beneficiaries generally are treated.

The court also notes that the Plan is explicit where no benefits will be paid, and there is no language in Section 7.2 describing situations where a participant is not entitled to any benefits at all.  *Cf. id.* at 27 (Section 7.1(c) of the Plan) ("No death benefits shall be payable on behalf of a Participant who dies before age 55 without a Spouse or Domestic Partner."); *id.* at 29 (Section 7.3(d) of the Plan) ("[N]o death benefit shall be payable on behalf of a Participant who dies before attaining age 55 without a Spouse or Domestic Partner on his date of death.").

This reading is consistent with the foundational principles of ERISA, as well, which generally forbids the forfeiture of a participant's vested benefit.  *See* 29 U.S.C. § 1053(a) ("Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement ago . . . .").  While there are certain exceptions to this rule, such as the death of a participant, 29 U.S.C. §

---

[4] The court recognizes that not all of the options laid out in Section 5.6 are reproduced in Section 7.2, but the specific language referenced here, which is found in Section 5.6 (b)(v), does not appear to depend upon which election a participant might make; instead, it provides for reduction of a participant's interest to a lump sum in *all* cases where the Beneficiary is not a natural person, regardless of the specific form of benefit defaulted to or chosen.

14

1053(a)(3)(A) ("A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that it is not payable if the participant dies."), even Lockheed agrees that the Plan does not condition forfeiture upon death, but upon "designation," or lack thereof, and Lockheed has not provided, nor has the court found, any provision of ERISA permitting forfeiture on that basis.  ECF No. 48 at 7 ("Further, it is clear that the Pension Plan and the SPD do not cause Natale to forfeit benefits solely because of his death. Rather, death benefits were not paid because he failed to designate a beneficiary . . . ."); *cf. Est. of Jones v. Children's Hosp. & Health Sys. Inc. Pension Plan,* 892 F.3d 919, 924 (7th Cir. 2018) (finding no ERISA violation where a plan document clearly provided death benefits only to a surviving spouse if a participant died before distributions began such that a designated beneficiary was not entitled to any benefit).

Finally, Lockheed's reference to the SPD and the beneficiary designation form are unavailing.  With respect to the latter, the form cannot alter the terms of the Plan, and in any case, while the form has fields in which a participant may include a date of birth and a social security number, it does not require that those fields be completed.  *See generally* ECF No. 44-6.  And it is well-settled that "plan summaries (or summaries of plan modifications)—like the SPD—may not be enforced as if they are the terms of the plan itself."  *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 395 (S.D.N.Y. 2012) (internal quotations omitted) (quoting *CIGNA Corp. v. Amara,* 563 U.S. 421, 437 (2011)).  Moreover, the SPD Lockheed cites explicitly states that where it conflicts with the Plan, the Plan governs.  ECF No. 44-7 at 4.[5]  Therefore, the SPD does not alter this analysis.

---

[5] This citation is to the page number assigned by the court's electronic filing system, as the quoted language precedes the pagination system internal to the SPD.

15

Accordingly, the court finds that the Plan's plain terms require Natale's service-based benefit to be reduced to an actuarially equivalent lump sum and paid to his estate. However, because the amount of that lump sum appears to remain in question, the court will defer entering final judgment at this time. The parties are instructed to meet and confer for the purpose of determining what, if any, dispute remains as to the amount to be paid. A United States Magistrate Judge will be assigned to facilitate this process.

### IV.   CONCLUSION

Accordingly, it is hereupon **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment, ECF No. 44, hereby is **GRANTED in part and DENIED in part.**
    i. All claims against Sikorsky are dismissed. The Clerk of Court is asked to please terminate Sikorsky from this action.
    ii. Count Two, the statutory theft claim, is dismissed as to Lockheed.
2. Plaintiffs' Motion for Summary Judgment, ECF No. 45, is **GRANTED.** The court finds that as a matter of law, death benefits must be paid as described, *supra*.
    i. The court defers entering final judgment until the amount of the benefit is determined.
    ii. The Clerk of Court is asked, respectfully, to please refer this action to a United States Magistrate Judge for the purpose of holding a settlement conference during or after which the parties may agree to a settlement or to a stipulated judgment.

3. Given the conclusions herein, the Motion to Amend/Correct Scheduling Order, ECF No. 43, is **DENIED as moot.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 15th day of January, 2026.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE